James R. LEE and Juanita M. Lee,
Plaintiffs-Appellants,

v.

Mitchell MIRBAHA, M.D., et al.,
Defendants-Respondents.

No. 67973.

Supreme Court of Missouri,
En Banc.

Dec. 16, 1986.

Rehearing Denied Jan. 13, 1987.

Burton H. Shostak, St. Louis, for plaintiffs-appellants.

Gail L. Fredrick, Springfield, for defendants-respondents.

ROBERTSON, Judge.

Plaintiff James Lee brought suit for medical malpractice against defendants Dr. Mirbaha, an orthopedic surgeon, Dr. Luh, the assisting physician, and South St. Louis Orthopedic, Inc., employer of the two doctors, after defendants performed a total left wrist replacement on Mr. Lee in January, 1979. Plaintiff submitted his claim against Dr. Mirbaha on the theory that the wrist replacement was not a reasonable medical treatment, or alternatively, that the doctor failed to implant the wrist prosthesis in the correct position within the wrist and hand bones. Only the former claim was brought against Dr. Luh. Plaintiff Juanita Lee claimed derivative damages as the spouse of defendants' patient.

The trial court submitted comparative fault instructions to the jury on defendants' pleaded theory that the plaintiff was contributorily negligent in failing to follow post-operative instructions to exercise the fingers of his left hand, and that such failure caused or contributed to cause any damage plaintiff may have sustained. The jury returned a verdict in favor of the defendants; plaintiffs appealed to the Eastern District Court of Appeals. On appeal, plaintiffs claim (1) instructional error and (2) abuse of the trial court's discretion in failing to grant plaintiffs' motion for new trial on the ground that the verdict is against the weight of the evidence. The Eastern District affirmed the trial court.

We granted transfer to consider whether this Court's adoption of comparative fault in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), permits a contributory comparative fault instruction where defendants offer evidence of acts or omissions of the plaintiff which were formerly only proof of mitigation of damages. We have jurisdiction and consider the case as if an original appeal. Mo. Const. art. V, § 10. We affirm the judgment of the circuit court.

## I.

Except on the question of whether plaintiff followed Dr. Mirbaha's instruction to exercise his left fingers after surgery, the basic facts are not in dispute. Plaintiff, who was fifty-eight years old at the time of trial, had worked for almost thirty years as a truck driver for Missouri Pacific Truck Lines. Prior to the surgery on his wrist, part of the ordinary duties of plaintiff's job required him to lift as much as one hundred pounds, load train cars using chains to strap down the load, crank dollies and set hooks in place for crane lifting.

Plaintiff first contacted Dr. Mirbaha for severe pain in his left wrist in October, 1975. X-rays revealed a prior fracture and the presence of advanced-stage degenerative arthritis. Dr. Mirbaha discussed with plaintiff various possible treatments for his arthritis, including a new "wrist replacement" procedure which was being developed but was not yet approved. Dr. Mirbaha asked plaintiff to return in six months. Plaintiff continued to have pain in his left wrist from 1975 through January, 1979, when he returned to see Dr. Mirbaha. The possibility of the "wrist replacement" was again discussed, as well as an alternative procedure called "wrist fusion." Several artificial wrist joints had been developed by 1979, including the Volz device, and the similar Meuli device. Dr. Mirbaha explained to plaintiff that a wrist replacement would permit greater pain-free movement than the wrist fusion. Dr. Mirbaha did not inquire about the physical labor requirements of Mr. Lee's job as a truck driver or his usual activities outside of employment.

On January 30, 1979, Dr. Mirbaha, assisted by Dr. Luh, removed the arthritic bone and inserted the Meuli prosthesis in plaintiff's wrist. Shortly thereafter the wrist replacement became dislocated and Dr. Mirbaha performed open reduction surgery to realign the parts of the prosthesis. Plaintiff's left wrist was placed in a cast; he was released from the hospital with instructions by Dr. Mirbaha on exercises he should do to promote healing. When the wrist cast was removed, plaintiff's arm and wrist were noticeably bowed in an angle away from his body, a condition known as ulnar deviation, which was still present at the time of trial.

Plaintiff continued to see Dr. Mirbaha until the end of June, 1979, at which time he was discharged by Dr. Mirbaha to return to work. Plaintiff returned to full-time employment with Missouri Pacific Truck Lines on July 2, 1979. Because of his senior status with the Teamster's Union, plaintiff was able to bid on and acquire any job at Missouri Pacific available for union members. For several years after surgery, he worked as a trailer inspector, a job that did not require use of his arm or wrist in a lifting capacity. When the plant where he worked as an inspector closed down in November, 1983, plaintiff resumed his former job as a truck driver. At trial, plaintiff testified to problems experienced on the job due to the lack of strength in his

left wrist and his inability to make a tight fist or to place his palm and fingers completely flat on a surface. He stated that these problems necessitated assistance by others with loading and unloading and the performance of other heavy work. He also complained of the cosmetic deformity of his wrist and stated that he wears long sleeved shirts to hide its odd appearance.

Plaintiff relied on the testimony of Dr. Ronald Carter to support his alternative theories that the wrist replacement operation was not a reasonable medical treatment or that the implant had been placed in an improper position within his hand and wrist. Dr. Carter, an orthopedic surgeon familiar with the Meuli artificial wrist implant and the similar prosthetic device developed by Dr. Robert Volz, testified that because a wrist prosthesis does not hold well under heavy stresses over a prolonged period of time, it is not recommended for persons engaged in heavy manual labor. He further testified that in his opinion the ulnar deviation was caused by improper placement of the prosthetic components in plaintiff's wrist. Dr. Carter stated, however, that his examination of Mr. Lee revealed that wrist mobility was within eighty percent of normal range, not unusual for a person of Mr. Lee's age, and that the position of the prosthesis did not warrant further surgery with the degree of symptoms experienced at that time.

Dr. Volz, inventer of the Volz devise, testified on behalf of defendants. He expressed the view that medical use of a prosthesis depended on the individual patient, that because the prosthesis might fail under certain stresses, it is not recommended for persons who engage in strenuous activities, and that the goal of pain relief must be weighed against the risk that the device might work loose. Based

on a hypothetical question asked on direct examination,[1] Dr. Volz stated that in his opinion, plaintiff was a reasonable candidate for the wrist replacement surgery performed by Dr. Mirbaha and that the prosthesis was used in a reasonable manner when inserted into plaintiff's wrist. He further testified that in his opinion, plaintiff's wrist condition has been improved as a result of the operation and that the "clawing" of plaintiff's fingers was due to his failure to exercise the joints properly following the operation.

Mr. Lee's claim against Dr. Mirbaha was submitted on the following verdict directing instruction:

### INSTRUCTION NO. 7

Your verdict must be for the plaintiff James Lee and you must assess a percentage of fault to defendant Mirbaha and defendant South St. Louis Orthopedic Group, Inc. if you believe:

First, either:

defendant Mirbaha performed a total wrist replacement upon plaintiff when such was not a reasonable medical treatment; or

defendant Mirbaha failed to implant the prosthesis in the correct position within the wrist and hand bones; and

Second, defendants, in any one or more of the respects submitted in paragraph First, were thereby negligent; and

Third, as a direct result of such negligence, plaintiff James Lee sustained damage.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant Mirbaha's and defendant Luh's profession.

---

1. Defendants' hypothetical question, put forth without objection, contained the following elements: The facts in plaintiff's medical records; a review of the x-rays; insertion of the prosthesis on a fifty-three year old employee of Missouri Pacific Truck Lines whose union seniority allowed him to bid various jobs; an employee who bid on a trailer inspection job with mini-

mal lifting requirements; and surgery on the left wrist of a right-handed man. In addition, Dr. Volz made his own observations that at the time of trial, the prosthesis had been in place for four and one-half years, had not loosened, and had given plaintiff relief from pain and a useful arc of motion.

This instruction is based on MAI 21.01, modified only by addition of the phrase directing the jury to assess a percentage of fault to defendants if their verdict was returned in favor of Mr. Lee. The definitional paragraph is based on MAI 11.06.

The court gave a converse instruction which read:

### INSTRUCTION NO. 8

Your verdict must be for defendants Mirbaha and South St. Louis Orthopedic Group, Inc. unless you believe:

First, either:

defendant Mirbaha performed a total wrist replacement upon plaintiff when such was not a reasonable medical treatment; or

defendant Mirbaha failed to implant the prosthesis in the correct position with the wrist and hand bones, and

Second, defendants, in any one or more of the respects submitted in paragraph First, were thereby negligent, and

Third, as a direct result of such negligence, plaintiff James R. Lee sustained damage.

The term "negligent" or "negligence" as used in these instructions means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant Mirbaha's and Luh's profession.

The verdict directing and converse instructions given on plaintiff's claim against Dr. Luh were similar in all respects except those portions concerning implantation of the prosthesis in an incorrect position and to reflect Dr. Luh's status as assisting physician.

The court also gave Instruction Nos. 11 and 18 for defendants which read:

You must assess a percentage of fault to plaintiff James R. Lee if you believe:

First, plaintiff James R. Lee failed to exercise the fingers of his left hand as

instructed by Dr. Mitchell M. Mirbaha, and

Second, plaintiff James R. Lee was thereby negligent, and

Third, such negligence of plaintiff James R. Lee directly caused or contributed to cause any damage plaintiff may have sustained

The term "negligent" or "negligence" as used in this instruction means the failure to use the degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

This instruction is patterned after MAI 32.-06, modified to require apportionment of fault. The definitional paragraph is based on MAI 11.02.

### II.

■ Plaintiffs first argue that the trial court erred in submitting Instruction Nos. 11 and 18 to the jury because Mr. Lee's alleged failure to exercise the fingers of his left hand, even if proved, occurred at a time subsequent to the surgery and therefore did not, as a matter of law, cause or contribute to cause the injury of which he complains. We do not reach appellant's claim of instructional error. Before reversal can be predicated on instructional error, the complaining party must show that the instruction misdirected the jury, thereby resulting in prejudice. *Hudson v. Carr*, 668 S.W.2d 68, 71 (Mo. banc 1984). Reversal is not permitted in the absence of such prejudice. *Koenig v. Babka*, 682 S.W.2d 96, 98 (Mo.App.1984); *Lawton v. Jewish Hospital of St. Louis*, 679 S.W.2d 370, 374 (Mo.App.1984).

We do not believe that the plaintiff was prejudiced in this case. The lack of prejudice is found by the fact that the jury returned a general verdict for the defendants. Instruction No. 7 is a complete verdict director which requires the jury to return a verdict for the plaintiffs if they find the facts hypothesized therein.[2] It

---

**2.** The same is true of Instruction No. 9, the verdict director concerning plaintiffs' claim against Dr. Luh.

contains no reference to Instruction Nos. 11 or 18.

We were presented with a similar situation in *Barnes v. Tools & Machinery Builders, Inc.*, 715 S.W.2d 518 (Mo. banc 1986). We must assume, as we did in that case, that the jury followed the instructions they were given and would have assessed a percentage of fault to the defendant had they found that each of the hypothesized facts were established. The verdict, however, was unequivocally returned in favor of the defendants in response to Instruction No. 8,[3] which conversed each of the propositions contained in Instruction No. 7. The jury necessarily must have concluded that the plaintiffs failed to establish at least one of the propositions necessary to return a verdict in their favor.[4] Because of this conclusion, the jury was never required to reach the question of apportionment of fault. Because the jury found no liability on the part of the defendants and returned a general verdict for the defendants under instructions not dependent on Instruction Nos. 11 and 18, we find no prejudice to have resulted to the plaintiffs. See *Barnes*, 715 S.W.2d at 521–22. Reversal is therefore not required.

### III.

Plaintiffs next claim error in the submission of the four true converse instructions submitted after plaintiffs' verdict directing instructions.[5] The submission of the true converse indicates that the defendants elected to rely upon plaintiffs' failure to prove one or more elements submitted in the verdict directing instructions—that defendants were not negligent, or, that their acts were not causal, or, that the plaintiff patient sustained no damage. The first contention of error is that each verdict director defined negligence as used in "this" instruction while each converse defined negligence as used in "these" instructions. Plaintiffs argue that the interchange of the two words mislead and confused the jury regarding the standard of care to be applied in each specific instruction.

Other than the exchange of the word "these" for "this," all the verdict directing and converse instructions defined negligence according to MAI 11.06, which offers the use of either word. In a case where all defendants are to be judged by the same standard of care, use of the word "these" is appropriate because there is no conflict with any other standard for any other persons or groups of persons. Where the conduct of different defendants is to be measured by different standards, the standard must be limited to specific instructions and consistent use of the word "this" becomes significant to delineate in which instruction the particular definition of negligence applies. Here, we discern no prejudice resulting from the exchange of the word "this," contained in the verdict directors and the word "these," in the converse instructions, since only one definition of negligence was used: "the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant Mirbaha's and defendant Luh's profession." Thus, the jury was directed to apply the same standard of care in plaintiffs' verdict directing instructions as in defendants' converse instructions. Even though it might have been more technically precise to have

---

3. Instruction No. 10 was the complete converse of Instruction No. 9 on the claim against Dr. Luh.

4. In this regard, evidence adduced at trial indicated that Mr. Lee continued to work full time for Missouri Pacific Truck Lines from July 2, 1979 to the date of trial, never missed work due to problems with his left wrist or hand or took a reduction in salary; and that while he experienced loss of flexibility and strength due to the wrist implantation, the arthritic pain he had

suffered for several years was relieved by the operation.

5. The challenged instructions are: Instruction Nos. 8 and 15, concerning, respectively, plaintiffs' claim and Juanita Lee's derivative claim against defendants Mirbaha and South St. Louis Orthopedic Group, Inc.; and Instructions Nos. 10 and 17 concerning, respectively, plaintiffs' claim and Juanita Lee's derivative claim against defendants Luh and South St. Louis Orthopedic Group, Inc.

used either the word "this" or "these" consistently throughout the instructions, any error is not prejudicial and therefore does not require reversal. *Hudson*, 668 S.W.2d at 71.

Plaintiffs also allege that the converse instructions defining defendants' negligence in terms of use for "these" instructions caused confusion because of the conflicting standard of care by which to judge Mr. Lee's contributory negligence contained in Instruction Nos. 11 and 18. As we have previously said, the jury ended its deliberation when it found that plaintiffs failed to establish liability on the part of the defendants, and therefore did not proceed to the stage where they otherwise would have considered the contributory negligence of Mr. Lee as directed by Instruction Nos. 11 and 18. Because the jury was never required to apply a standard of care to Mr. Lee's conduct, any confusion which might have been engendered by exchange of the words "these" and "this" is simply speculative and cannot be the basis for a finding of error.

### IV.

Finally, plaintiffs contend that the trial court erred in overruling plaintiffs' motion for new trial on the basis that the verdict is against the weight of the evidence. Plaintiffs' argument fails for two reasons.

■ First, plaintiffs did not request a directed verdict at the close of the evidence, and therefore either conceded that there was an issue of fact on liability or waived the issue. *Goodenough v. Deaconess Hospital*, 637 S.W.2d 123, 128 (Mo.App. 1982); *Edens v. Meyers*, 365 S.W.2d 559, 561 (Mo.1973).

■ Second, determination of whether a verdict is against the weight of the evidence is a matter within the province of the trial court; we will not disturb its ruling. *Veach v. Chicago and North Western Transportation Company*, 719 S.W.2d 767 (Mo. banc 1986); *Clark v. Quality Dairy Company*, 400 S.W.2d 78, 80 (Mo.1966)

Plaintiffs do not claim that the verdict was unsupported by any evidence. Their argument is directed to the contention that there was no evidence to counter plaintiffs' submission that the surgery performed on Mr. Lee was inappropriate for a patient required to engage in heavy weight-bearing labor. This view ignores the testimony of Dr. Volz that the wrist replacement surgery was reasonable. It also ignores the possibility that the jury's verdict for defendants was based upon a finding of no damages without regard to the issue of negligence respecting the selection of surgical procedure. Although Mr. Lee did not have the desired strength in his left wrist, he was relatively free of the arthritic pain for which he had undergone surgery. Plaintiffs do not allege, nor does the record indicate any passion, prejudice or misconduct on the part of the jury. The question of sufficiency of the evidence was raised in plaintiffs' motion for new trial, argued and denied by the trial court. "If a trial court refuses to grant a new trial on the ground that the verdict is against the weight of the evidence, appellate courts will not pass on the weight of the evidence." *Veach*, supra, at 769.

The judgment of the trial court is affirmed.

HIGGINS, C.J., and BILLINGS, BLACKMAR and WELLIVER, JJ., concur.

DONNELLY and RENDLEN, JJ., concur in result.