Anna **MILLER**, Appellant,

v.

**CITY OF KANSAS CITY, Missouri,**
**Respondent.**

**Nos. WD 61942, WD 61994.**

Missouri Court of Appeals,
Western District.

Dec. 9, 2003.

James H. Thompson, Jr., Esq., Gladstone, MO, for appellant.

Saskia C.M. Jacobse, Esq., Kansas City, MO, for respondent.

Before ELLIS, C.J., HAROLD L. LOWENSTEIN and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

Anna Miller (appellant) sued the city of Kansas City, Missouri (City or respondent) for injuries sustained in a one-car accident. She alleged that a turn on the road where the accident occurred was unsafe and constituted a dangerous condition of City property. Miller claimed that she lost control of her car as she attempted to make the turn, which resulted in the accident. The jury returned verdict in favor of Kansas City.

This appeal is confined to two errors: (1) instructional error, and (2) improper exclusion of evidence. The court will first take up the effect of the error in instructions.

Miller submitted a verdict director based on MAI 31.16 [1995 Revision], the MAI verdict director to be given when liability is premised on a dangerous condi-

tion on a public entity's property, as modified by MAI 37.01 [1986 New], the MAI approved modification for cases involving comparative fault. Miller's verdict director, which was *refused* by the trial court stated:

> In your verdict you must assess a percentage of fault to defendant whether or not plaintiff was partly at fault if you believe:

> First, there was inadequate warning that NW 64th Street contained a turn that could not be made at the posted speed limit, and, as a result, NW 64th Street was not reasonably safe, and

> Second, defendant knew or by using ordinary care could have known of this condition in time to warn of such condition, and

> Third, defendant failed to use ordinary care to warn of such condition, and

> Fourth, such failure *directly caused or directly contributed* to cause damage to plaintiff.

> The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful person would use under the same or similar circumstances. (emphasis added)

■ Having refused Miller's proposed verdict director, the trial court submitted its own instruction. The verdict director *given* by the trial court as Instruction No. 6 stated:

> In your verdict you must assess a percentage of fault to defendant whether or not plaintiff was partly at fault if you believe:

> First, there was inadequate warning that NW 64th Street contained a turn that could not be made at the posted speed limit, and, as a result, NW 64th Street was not reasonably safe, and

Second, defendant knew or by using ordinary care could have known of this condition in time to warn of such condition, and

Third, defendant failed to use ordinary care to warn of such condition, and

Fourth, as a *direct result* of such failure plaintiff sustained damage.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful person would use under the same or similar circumstances. (emphasis added)

The trial court also submitted, without objection, the respondent's comparative fault instruction as Instruction No. 7:

In your verdict you must assess a percentage of fault to plaintiff, whether or not defendant was partly at fault, if you believe:

First, either:

plaintiff drove at an excessive speed, or

plaintiff failed to keep a careful lookout, or

plaintiff veered off the roadway, and

Second, plaintiff in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence of plaintiff *directly caused or directly contributed* to cause any damage plaintiff may have sustained.

The term "negligent" or "negligence" as used in these instructions means the failure to use the highest degree of care. The phrase "highest degree of care" means that degree of care that a very careful person would use under the same or similar circumstances. (emphasis added)

The jury returned a verdict, which first assessed 0% of fault to Kansas City, then assessed 100% fault to Miller. Miller appeals, claiming that the trial court erred in excluding the evidence she offered and in failing to submit her verdict director.

ANALYSIS

INSTRUCTIONAL ERROR

 Miller claims that the trial court erred in submitting a verdict director that deviated from what is mandated by the MAI. Respondent City concedes that the given instructions were erroneous. However, an instructional error will result in reversal only when the error was prejudicial. *Hein v. Oriental Gardens, Inc.*, 988 S.W.2d 632, 634 (Mo.App.1999). An instructional error is prejudicial if it misdirects, misleads, or confuses the jury. *Id.* Since the respondent concedes that the instructions were erroneously given, the only issue before this court is whether the instructional error prejudiced the Miller.

The text of Miller's and the court's verdict directors are identical except for the causation language in paragraph four of each instruction. Miller's proposed instructions stated: "such failure *directly caused or directly contributed to cause* damage to plaintiff." (emphasis added) The actual instructions submitted by the court stated: "*as a direct result* of such failure plaintiff sustained damage." (emphasis added)

Miller emphasizes that the respondent's comparative fault instruction used a different causation standard than the standard used in the verdict director submitted by the trial court. The comparative fault instruction stated: "such negligence of plaintiff *directly caused or directly contributed to cause* any damage plaintiff may have sustained." (emphasis added)

Miller cites two Supreme Court cases that held that use of conflicting causation standards in separate instructions may be sufficient to confuse the jury and prejudice

the complaining party. In *Hiers v. Lemley*, 834 S.W.2d 729, 734 (Mo. banc 1992), the verdict director was modified using the "directly caused or directly contributed to cause" language, whereas the converse instruction used the "direct result" language. This inconsistency was sufficient to warrant a reversal of the trial court's judgment, because the instructions may have caused the jury to believe that the defendant could not be liable if the defendant only contributed to plaintiff's damages. *Id.* Similarly, in *Carlson v. K–Mart Corp.*, 979 S.W.2d 145, 147–48 (Mo. banc 1998), the Supreme Court reversed the trial court's judgment when conflicting causation standards were used in the verdict director and the damages instruction. The Supreme Court noted that "the phrase 'direct result' is sufficiently inconsistent with 'directly caused or contributed to cause' to produce potentially inconsistent results where the phrases are used in different instructions." *Id.* at 148.

■ However, any potential confusion that could result from inconsistent causation standards in the verdict director and the comparative fault instructions is simply avoided when the jury does not even consider the latter instructions. *See Bowls v. Scarborough*, 950 S.W.2d 691, 702 (Mo. App.1997). "Instructional error is not prejudicial if the jury never reaches the point in question." *Id.*

Miller concedes that there are cases that hold that there is no prejudice to the complaining party even when the court has given erroneous instructions if the jury assesses 100% fault to one party. In *Lee v. Mirbaha*, 722 S.W.2d 80 (Mo. banc 1986), the plaintiff argued that the trial court erred in submitting comparative fault instructions. There was no prejudice since the jury returned a general verdict in favor of the defendants. *Id.* at 83–84; *Biever v. Williams*, 755 S.W.2d 291, 294 (Mo.App.1988). Thus, the jury was not required to reach the issue of apportionment of fault and did not need to consider the comparative fault instruction. *Lee*, 722 S.W.2d at 84. Therefore, plaintiff could not have been prejudiced by those instructions. *Id.*

Miller's attempt to distinguish her case from *Lee* by claiming *Lee* involved erroneously given instructions using consistent causation standards, fails. The instructions in *Lee* contained the "direct result" language in the verdict director, while the *comparative fault* instructions used "directly caused or contributed to cause" language. *Id.* at 82–83. Therefore, Miller is incorrect in stating that the causation standards used in *Lee* were consistent with each other.[1] In *Wilson v. Shanks*, 785 S.W.2d 282 (Mo. banc 1990), the relevant jury instructions were nearly identical to the instructions used in this case. The verdict director stated: "In your verdict you must assess a percentage of fault to defendant if you believe ... as a direct result of such negligence, plaintiff Ivan Wilson sustained damage." *Id.* at 284. The comparative fault instruction stated: "In your verdict ... you must assess a percentage of fault to plaintiff Ivan Wilson, whether or not defendant was partly at fault, if you believe ... [s]uch negligence of [p]laintiff Ivan Wilson directly caused or directly contributed to the cause of any damage [p]laintiff Ivan Wilson may have sustained." *Id.* The only differences between the instructions in *Wilson* and the instructions here are the addition of the

---

1. Miller is probably referring to the consistent causation language in the verdict director and the converse instruction in *Lee*. Both the verdict director and the converse instruction used the "direct result" language. However, the inconsistency still existed between the verdict director and the comparative fault instruction, as is true in the case at bar.

plaintiff's name and the substitution of the applicable elements of the tort alleged in each case. Although the trial court used conflicting causation standards in separate jury instructions, the Supreme Court of Missouri, citing *Lee*, held that there was no prejudice in giving the comparative fault instruction since the jury assessed 100% fault to the plaintiff. *Id.* at 285. Miller's attempt to distinguish this case is unavailing.

Since the jury assessed 100% fault to Miller, it did not need to then consider the inconsistent comparative fault instructions submitted by the respondent. Consequently, the jury could not have been confused by the inconsistent causation language used in the verdict director and the comparative fault instruction, because it did not reach the point in issue. Therefore, no prejudice resulted from merely using inconsistent causation language in the two separate instructions.

The remaining issue is whether the instructional error is prejudicial per se. In *Higby v. Wein*, 996 S.W.2d 95 (Mo.App. 1999), the court held that a verdict director using "direct result" when the plaintiff was entitled to use the "directly caused or directly contributed to cause" language was prejudicial error. The court reasoned that it could not determine whether the jury held for the defendant because the plaintiff failed to meet its burden in proving each element of its case or because the jury believed that the defendant had to be the sole cause of the injury to be liable to the plaintiff. *Id.* at 100–01. However, this case can be distinguished from *Higby*.

*Higby* did not involve any issues of comparative fault between the plaintiff and the defendant; rather, the multiple causes of the alleged injury were the defendant's negligence and a pre-existing condition that may have contributed to the plaintiff's damages. *Id.* at 96. Therefore, the ver-

dict director only required the jury to give a verdict in favor of either plaintiff or defendant.

In contrast, the verdict director in this case required the jury to assess a percentage of fault to the City whether or not Miller was partly at fault. Furthermore, the jury was given a verdict form that required it to apportion fault between Miller and the respondent. The additional instructions contained in the introductory paragraph of the verdict director and the verdict form requiring the jury to apportion fault between the plaintiff and the defendant were not present in *Higby* and are sufficient in this case to show that the jury was not confused by the language used in the verdict director.

There are several cases that hold that additional instructions read in conjunction with the erroneous instruction and a clear verdict form are sufficient to cure instructional error. *See also Johnson v. Ballard*, 782 S.W.2d 712 (Mo.App.1989); *Abshire v. Nordson Corp.*, 688 S.W.2d 1 (Mo.App. 1985); *Brickner v. Normandy Osteopathic Hosp., Inc.*, 687 S.W.2d 910 (Mo.App.1985); *Sall v. Ellfeldt*, 662 S.W.2d 517 (Mo.App. 1983). In *Sall v. Ellfeldt*, the plaintiff claimed that the trial court erred in giving converse instructions that used causation language inconsistent with the language used in the verdict director. *Id.* at 524. The plaintiff claimed that the error was prejudicial, because the "direct result" language used in the converse instruction seemed to indicate that the defendant could only be liable if he was the sole cause of plaintiff's injuries. *Id.* Finding that there were sufficient instructions to cure any possible confusion, the court affirmed the judgment. *Id.* at 526. These instructions included, *inter alia*, the verdict director and a jury verdict form, both requiring the jury to apportion fault between the two joint tort-feasors. *Id.* Conse-

quently, the verdict director and the verdict form "dispel[led] any intimation of sole cause, and could not otherwise distract the jury to that mistake." *Id.*

Cases involving apportioning liability between joint tort-feasors are not directly on point, but the underlying principle and rationale behind these decisions are applicable to this case. The verdict director contained language that the jury was to assess a percentage of fault to the defendant City "whether or not plaintiff was partly at fault." Likewise, the verdict form required the jury to assess a percentage of fault to both the defendant and the plaintiff. Both the instruction and the verdict form make clear that the jury could find that the City could be held liable even if Miller was partially at fault. Therefore, the jury could not have been confused by believing that the City had to be the sole cause of Miller's injuries before liability could be assessed. Point denied.

### EXCLUSION OF EVIDENCE

In her second point, Miller claims that the trial court erred in excluding certain evidence at trial. The following evidence offered by Miller was excluded:

> reports of prior accidents at or near the location of Miller's accident, testimony and photographs concerning prior and subsequent damage to the guardrail that Miller's car hit, and testimony concerning the number of accidents at the location.

However, Miller has not provided this court with the evidence that she claims was improperly excluded.[2] "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be pre-

sented." Rule 81.12(a). Because Miller's record on appeal does not contain the evidence that she claims was erroneously excluded, this court will not entertain her second point, which is, therefore, dismissed. Point denied.

The judgment is affirmed.

All concur.

---

**2.** The evidence that Miller claims was erroneously excluded is mentioned in the Miller's brief. Documents which do not appear in the record but are attached only to a party's brief are not considered a part of the record and will not be considered on appeal. *Choate v. Natvig,* 952 S.W.2d 730, 733 (Mo.App.1997).