**Georgia J. CARLSON, Appellant,**

v.

**K–MART CORPORATION, Respondent.**

No. 80647.

Supreme Court of Missouri,
En Banc.

Nov. 3, 1998.

Rehearing Denied Dec. 1, 1998.

Michael W. Manners, Independence, for Appellant.

Michael W. Shunk, Barry W. McCormick, Scott C. Long, Overland Park, KS, for Respondent.

WHITE, Judge.

Georgia Carlson sued K–Mart Corporation for injuries sustained while shopping at a K–Mart store. Several months later, Ms. Carlson was involved in an automobile accident that, K–Mart argues, actually caused her injuries. The jury was given a verdict directing instruction that held K–Mart liable if it negligently caused or contributed to cause Ms. Carlson's injuries, and the jury found in Ms. Carlson's favor. The trial court, however, refused Ms. Carlson's request to modify the damage instruction to award damages for injuries caused or contributed to by K–Mart's negligence, and Ms. Carlson appealed. Because we find that, under the circumstances of this case, the damages instruction should have been consistent with the verdict directing instruction, we reverse and remand for a new trial on the issue of damages.

On June 8, 1992, Georgia Carlson was shopping at the K–Mart store in Independence, Missouri. When she bent down to examine some merchandise on a lower shelf, boxes containing crockpots fell on her from an upper shelf, striking her on the face and head and causing her to fall to the floor. Later that day, Ms. Carlson went to a hospital seeking treatment for injuries to her back, neck, head and mouth. In the weeks after the accident, Ms. Carlson's back pain became more severe, causing her to seek further medical treatment. In October 1992, Ms. Carlson underwent an MRI, which showed a protruding disk in her lumbar spine. At that time, Ms. Carlson was com-

plaining of pain in her lower back and right hip and numbness in her right thigh, symptoms that are consistent with radiculopathy. These symptoms may be caused by pressure on the nerve root exiting from the spine, pressure that may be caused by a disk protrusion such as that shown on Ms. Carlson's MRI. This MRI also showed degenerative disk disease, which can be a normal part of the aging process and is often asymptomatic in those with the condition. No evidence was presented that Ms. Carlson had shown any symptoms of the disease prior to the K–Mart incident.

On December 12, 1992, Ms. Carlson was involved in an automobile accident. As she was driving her car at approximately twenty miles per hour, a drunk driver, who was being chased by a police officer, crashed into the rear of her vehicle at high speed, possibly as much as eighty to one hundred miles per hour. At that time, Ms. Carlson was taken to the hospital, telling the ambulance driver that her back hurt somewhat more than it had previously; she was released after a fifty minute examination. Five days later, Ms. Carlson saw an orthopedic surgeon, complaining that her neck pain had increased markedly since the automobile accident. In June of 1993, after Ms. Carlson's radicular symptoms became more severe, she saw a neurosurgeon, who diagnosed her protruding disk, based upon the October MRI. After conservative attempts to treat this problem failed, and after a December 1993 CT scan confirmed the protruding disk, Ms. Carlson underwent back surgery in March 1994. This surgery also failed to alleviate her symptoms, and Ms. Carlson continues to experience painful and disabling symptoms that will require ongoing treatment.

At trial, the primary dispute was what part each of these three factors, possible preexisting degenerative disk disease, the K–Mart incident, and the automobile accident, played in Ms. Carlson's present back injury. Several of the medical experts who testified at trial said that it was impossible to determine what role each of the accidents had played in creating Ms. Carlson's condition. One of Ms. Carlson's experts testified that the K–Mart incident was solely responsible

for her injuries, and that the automobile crash had a negligible effect on her condition. There was also conflicting medical evidence on the question of to what degree degenerative disk disease was responsible for some part of Ms. Carlson's condition. No expert testified that it was possible to segregate the injury or exacerbation caused by the automobile accident from the injury caused by the K–Mart incident. After trial, the jury found K–Mart negligent and awarded Ms. Carlson $100,000. Ms. Carlson appeals from that verdict on the grounds that the jury was improperly instructed on the calculation of damages.

The trial court gave the following verdict directing instruction:

## INSTRUCTION NO. 6

Your verdict must be for Plaintiff if you believe:

First, there were boxes stored on the overhead shelf of the Kitchen Corner and as a result the aisles in the Kitchen Corner were not reasonably safe, and

Second, Defendant knew or by using ordinary care could have known of this condition, and

Third, Defendant failed to use ordinary care to remove it, barricade it, or warn of it, and

Fourth, such failure directly caused or directly contributed to cause damage to the plaintiff.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

The "directly caused or directly contributed to cause" language is drawn from MAI 19.01, which allows the plaintiff to modify the verdict director in cases where there are multiple causes of damage, and an instruction limiting liability to injuries that are a "direct result" of defendant's negligence might be misleading. As the commentary to the instruction points out, this modification is intended to properly instruct the jury as to the law where there are multiple causes of injury:

The general rule is that if a defendant is negligent and his negligence combines with that of another, or with any other independent, intervening cause, he is liable, although his negligence was not the sole negligence or the sole proximate cause, and although his negligence, without such other independent, intervening cause, would not have produced the injury.[1]

Ms. Carlson's theory of the case was that the K–Mart incident was entirely responsible for the injuries she sustained to her back, or, in the alternative, that the K–Mart incident and the automobile accident combined to cause injury to her back. Because her claim involved multiple alleged causes of injury, the trial court used the Rule 19.01 modification, and K–Mart does not argue that the verdict directing instruction was improper.

The question where the parties join issue in this appeal is whether the damage instruction given was proper, or whether it necessarily should have been consistent with the verdict director. The jury was instructed as follows:

### INSTRUCTION NO. 7

If you find in favor of Plaintiff, then you must award Plaintiff such sum as you believe will fairly and justly compensate Plaintiff for any damages you believe she sustained and is reasonably certain to sustain in the future as a direct result of the K–Mart occurrence.

The trial court rejected Ms. Carlson's proposed damage instruction:

### INSTRUCTION NO. C

If you find in favor of Plaintiff, then you must award Plaintiff such sum as you believe will fairly and justly compensate Plaintiff for any damages you believe she sustained and is reasonably certain to sustain in the future which was directly caused or contributed to be caused by the incident at K–Mart.

Both of these instructions are patterned on MAI 4.01, which reads:

If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence.

The Notes on Use for this instruction indicate that, in cases where multiple possible causes of injury are shown in the evidence, the instruction must be modified to refer specifically to the negligent conduct of the defendant mentioned in the verdict director.[2] As this Court has held, it is reversible error not to modify the instruction in this way.[3] Similarly, modification of this instruction has been approved where a subsequent event is alleged to have aggravated an earlier injury.[4] In these cases, the instruction was modified to allow the plaintiff to recover for the injuries resulting from a later occurrence if the jury found that the injuries were caused or contributed to by the earlier negligent conduct of the defendant.[5] As these cases show, the purpose of modifying MAI 4.01 in cases where the evidence shows multiple potential causes for an injury is to identify which causes of injury the plaintiff is entitled to be compensated for. It is axiomatic that the injury that the plaintiff is entitled to be compensated for is the damage produced by the negligent conduct described in the ver-

---

1. *Gaines v. Property Serv. Co.,* 276 S.W.2d 169, 173–74 (Mo.1955) (internal citations omitted).

2. MAI 4.01, Notes on Use, Note 3.

3. *Vest v. City Nat. Bank & Trust Co.,* 470 S.W.2d 518, 520–21 (Mo.1971); *See also Homm v. Oakes,* 453 S.W.2d 679, 681–82 (Mo.App.1970).

4. *Lockwood v. Schreimann,* 933 S.W.2d 856, 862–63 (Mo.App.1996); *Ponciroli v. Wyrick,* 573 S.W.2d 731, 735 (Mo.App.1978); *Chaussard v. Kansas City Southern R.. Co.,* 536 S.W.2d 822, 829 (Mo.App.1976).

5. *Lockwood,* 933 S.W.2d at 862; *Ponciroli,* 573 S.W.2d at 735 n. 1; *Chaussard,* 536 S.W.2d at 826.

dict director. As this Court has previously noted, the phrase "direct result" is sufficiently inconsistent with "directly caused or contributed to cause" to produce potentially inconsistent results where the phrases are used in different instructions.[6]

Thus, it is, as Ms. Carlson argues, confusing to instruct the jury that, on the one hand, a defendant is liable if he "directly caused or contributed to cause damage" to the plaintiff, but that the measure of such damage is only that which "directly resulted" from such conduct. If the "direct result" language is confusing in the verdict director when there are multiple possible causes of injury, it is equally so in the damages instruction.

K–Mart argues that this instruction makes it liable for all injuries ever suffered by the plaintiff to her back, whether or not they were caused by K–Mart's negligence. As noted above, the proposed damage instruction is properly modified to allow recovery only for that damage directly caused or contributed to by defendant's negligence. On the basis of this instruction, K–Mart remains perfectly free to argue, as it did here, that the current condition of plaintiff's back was not directly caused or contributed to by its negligence, and that the automobile accident or natural degenerative disk disease caused plaintiff to suffer damage that was neither caused nor contributed to by the K–Mart incident.

The damage instruction given here should have been modified to track the verdict directing instruction, and the confusion engendered by the conflict between the instructions prejudiced Ms. Carlson, entitling her to a new trial.[7] Since K–Mart did not timely appeal the judgment of the trial court as to liability and no error appears as to that issue,

the retrial shall be solely to determine the amount of damages.[8]

The judgment of the trial court is reversed as to the damage award, but affirmed in all other respects. The cause is remanded to the trial court for a new trial as to the amount of damages sustained by plaintiff.

All concur.

---

**6.** *Hiers v. Lemley,* 834 S.W.2d 729, 733–34 (Mo. banc 1992).

**7.** Because of our resolution of this issue we do not reach Ms. Carlson's second point of error.

**8.** Rule 84.14; *Tune v. Synergy Gas Corp.,* 883 S.W.2d 10, 22 (Mo. banc 1994).